UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL JAMES WELLS,

                                      Plaintiff,              Case # 16-CV-6850-FPG

v.                                                                    DECISION AND ORDER

SUPERINTENDENT J. COLVIN, et al.,

                                      Defendants.
_____

## INTRODUCTION

*Pro se* Plaintiff Michael James Wells filed this action pursuant to 42 U.S.C. § 1983, alleging he was subjected to unconstitutional conditions of confinement at Five Point Correctional Facility in violation his Eighth Amendment rights. ECF No. 1. Defendants Captains Bryan Norris and Robert Shields[1] now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 36. For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Beginning in April 2015, Plaintiff was housed in the residential mental health unit ("RMHU") at Five Points. ECF No. 36-5 at 2; ECF No. 35-1 at 5. Over the next six months, Plaintiff engaged in impulsive and self-destructive behavior and was issued misbehavior reports that led to disciplinary proceedings. *Id.* On October 3, 2015, Plaintiff became upset after security staff searched his cell and confiscated various contraband. ECF No. 36-5 at 2; ECF No. 36-1 at 6-7. He screamed at staff and threw his body into the solid metal cell door so hard it bowed outward. ECF No. 36-1 at 7. Plaintiff, who was handcuffed, also stomped a metal desk that was bolted into

---

[1] In a September 15, 2017 Screening Order, the Court dismissed claims against Defendant Colvin with prejudice. ECF No. 9.

the concrete wall onto the ground and threw the desk with such force that he damaged the Lexan glass[2] cell door window. *Id*. at 7-8. He then attempted to use the desk to pry open the rear door. *Id.* at 8. He also wrote profanities on the wall and propped up his mattress and other items to block the cell door window. *Id*.

Plaintiff was later placed on one-on-one mental health watch and moved to a cell in the residential crisis treatment program unit, and Defendants and other staff members authorized a series of property deprivation orders ("PDOs").[3] *Id*. at 8. Beginning October 3, 2015, the PDOs deprived Plaintiff of his mattress, pillow, desk, paper, magazines, books, linen, towels, and sneakers. *Id*. The PDOs were reviewed and renewed daily and Plaintiff was told that they would be discontinued if he did not have additional disciplinary incidents. *Id*. at 17.

Plaintiff returned to his cell in the RMHU on October 5, 2015, and, after finding that some of his personal property was removed pursuant to the PDO, he used his mattress and blanket to cover the door window to "prompt a reaction from security staff." *Id*. at 9-10. Norris renewed the existing PDO due to Plaintiff's "continued erratic behavior and the need to ensure security staff could continue to observe/monitor Plaintiff for his own safety." *Id.* at 10. Norris also issued a five-day cell shield[4] order on October 6 and 12, 2015. *Id*. at 10-11.

Each day of the PDO period, Plaintiff was given his medication, talked to mental health staff, and was seen by RMHU staff. *Id*. Mental health staff periodically recorded that Plaintiff was "adequately groomed" or that his hygiene "appeared good," and that his cell hygiene was

---

[2] Lexan glass is polycarbonate, which is an impact-resistant glass substitute several hundred times stronger and more durable than glass. ECF No. 36-3 at 5 n.1.

[3] Norris authorized PDOs on October 5-9, 15-16, 19-23, and 26-29, 2015. ECF No. 36-3 at 5, 33-45. Shields authorized PDOs on October 13-14 and 30-31, 2015. ECF No. 36-4 at 5, 12-24. Other staff members, who are not defendants in this case, authorized PDOs on the dates not listed.

[4] A cell shield is a plastic covering that can be attached to an inmate's cell door to prevent him from launching bodily fluids or other items at staff. ECF No. 36-3 at 6.

"good, with no odors" or "above average for this environment." *Id.* at 11, 14-16. On October 6, 2015, mental health staff noted that Plaintiff "said he did not have toothpaste or a toothbrush." ECF No. 36-3, Ex. E at 6 (filed under seal at ECF No. 41). Plaintiff had access to showers three times per week throughout the deprivation period. ECF No. 43-2 at 5. Security staff gradually returned Plaintiff's personal items and all PDOs were discontinued on November 2, 2015. ECF No. 36-1 at 12, 16.

Plaintiff filed five grievances regarding the PDOs on October 13, 20, 25, and 31 and November 1, 2015. ECF No. 1 at 21-24. Plaintiff stated that he was being deprived of items pursuant to the PDOs and disciplinary incidents that occurred before October 2015,[5] as well as toothpaste, soap, and "hygiene items." *See id.*[6] In his Complaint, Plaintiff alleged he was deprived of toiletries and toilet paper for the entire deprivation period. *Id.* at 3-4. Plaintiff testified that he was deprived of hygiene items for at least two weeks and that he started getting those items back during the last 10 days of the 30-day period. ECF No. 36-2 at 57-58. Plaintiff alleges that he suffered chronic lower back pain after being forced to sleep on a steel bed frame during the deprivation period.[7] ECF No. 1 at 3-4.

Defendants argue that they are entitled to summary judgment because the PDOs were necessary and do not rise to the level of a constitutional violation. ECF No. 36-5. Defendants dispute that Plaintiff was deprived of hygiene items but assert that, even if he was, any such deprivation was temporary, not their fault, and not serious enough to violate Plaintiff's rights. *Id.*

---

[5] Before the PDOs at issue here, Plaintiff was deprived of a razor and clippers and had lost visitation, phone, package, and recreation privileges. ECF No. 36-1 at 5-6.

[6] Plaintiff's October 13, 2015 grievance indicates he was being deprived soap and toothpaste, among the other loss of privileges and items the PDOs authorized. ECF No. 1 at 23. Plaintiff included deprivation of "hygiene items" in his October 20, 25, and 31, 2015 grievances. *Id.* at 21-22, 24.

[7] Allegations that Plaintiff suffered from back pain stemming from the deprivation period first appear in a sick call request form dated November 4, 2015. ECF No. 1 at 46. These allegations are repeated in various sick call request forms, letters, and Freedom of Information Law request forms. *Id.* at 33-36, 38-40, 43-45, 47

at 3, 8-9. Alternatively, Defendants argue that they are entitled to qualified immunity and were not personally involved in depriving Plaintiff hygiene items. *Id*. at 12-18.

Plaintiff asserts that the PDOs were retaliatory, unconstitutional, and unnecessary. ECF No. 43-2 at 3. He argues that Defendants, despite knowing that Plaintiff was being deprived of property outside the scope of the PDOs, were deliberately indifferent and treated him inhumanely in violation of the Eighth Amendment. ECF No. 43-3 at 8.

## LEGAL STANDARD

A court grants summary judgment when the moving party demonstrates that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a)-(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is the movant's burden to establish the nonexistence of any genuine issue of material fact. If there is record evidence from which a reasonable inference in the non-moving party's favor may be drawn, a court will deny summary judgment. *Id.*

Once the movant has adequately shown the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to present evidence sufficient to support a jury verdict in its favor, without simply relying on conclusory statements or contentions. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing Fed. R. Civ. P. 56(e)).

Here, in light of Plaintiff's *pro se* status, the Court will construe his papers liberally "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2009) (quotation marks omitted). Nevertheless, proceeding *pro se* does not relieve Plaintiff from the usual summary judgment requirements. *See Wolfson v. Bruno*, 844 F. Supp. 2d 348, 354 (S.D.N.Y. 2011).

**DISCUSSION**

I.  **Conditions of Confinement**

The Eighth Amendment of the United States Constitution prohibits the infliction of cruel and unusual punishment and applies to the states through the Due Process clause of the Fourteenth Amendment. *Trammel v. Keane*, 338 F.3d 155 (2d Cir. 2003). To establish an Eighth Amendment violation based on the conditions of confinement imposed by a deprivation order, a plaintiff must show: "(1) that the deprivation alleged is objectively serious such that plaintiff was denied the minimal civilized measure of life's necessities, and (2) that the defendant official possessed a sufficiently culpable state of mind associated with the unnecessary and wanton infliction of pain." *Id.* (citation and quotation marks omitted)). The defendant's state of mind must reveal "deliberate indifference to inmate health or safety," *id.* at 162, which "entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837.

"When the conditions complained of are the result of disciplinary measures imposed against an inmate, the deliberate indifference standard must be applied in a way that accounts for the precise circumstances of the alleged misconduct and the competing institutional concerns." *George v. McGinnis*, No. 05-CV-84(SR), 2008 WL 4412109, at *5 (W.D.N.Y. Sept. 23, 2008) (citation and quotation marks omitted). Thus, a court considers "whether a deprivation order was reasonably calculated to restore prison discipline and security and, in that purposive context, whether the officials were deliberately indifferent to [the plaintiff's] health and safety." *Id.* (quotation marks omitted).

Plaintiff alleges two conditions of confinement claims: one related to the conditions the PDOs imposed and one related to the deprivation of hygiene items not included in the PDOs.

### A. PDOs

#### 1. Objective Prong

Defendants argue that Plaintiff cannot satisfy the objective prong of an Eighth Amendment claim as to the conditions imposed by the PDOs. Specifically, they contend that the temporary deprivation of items listed on the PDOs, like a mattress, bedding, and clothing, did not violate Plaintiff's Eighth Amendment rights because these items were taken from him as "a reasonable response to the potential risk of harm" to Plaintiff. ECF No. 36-5 at 7. The Court agrees. The PDOs temporarily deprived Plaintiff of items he had previously used or potentially could use to cover his cell door and window to prevent staff from observing him. Accordingly, Plaintiff has not demonstrated an objectively serious deprivation.

#### 2. Subjective Prong

Additionally, Plaintiff has not demonstrated the subjective element of this claim, *i.e.*, that Defendants were deliberately indifferent. The PDOs were a reasonable response to Plaintiff's erratic and dangerous behavior and served a clear penological purpose. Moreover, Plaintiff was not subjected to the PDOs any longer than was deemed penologically necessary. The entire deprivation period was only 30 days and certain items, like Plaintiff's sneakers, mattress, pillow, and linens, were returned to him within about two weeks. ECF No. 36-1 at 12-13. Defendants issued the PDOs in response to the October 3, 2015 incident and therefore the Court cannot find that Defendants were deliberately indifferent to Plaintiff's health and safety in doing so. *Benitez v. Locastro*, No. 9:04-CV-423, 2010 WL 419999, at *10 (N.D.N.Y. Jan. 29, 2010) (citing *Hudson v. McMillan*, 503 U.S. 1, 6 (1992) ("Prison administrators . . . should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.")).

Accordingly, for all the reasons stated, the Court dismisses Plaintiff's conditions of confinement claim that relates to the PDOs.

### B. Deprivation of Toiletries

#### 1. Objective Prong

Plaintiff asserts that he was wrongly deprived of hygiene items that the PDOs did not authorize, like soap, toothpaste, deodorant, shampoo, and toilet paper. ECF No. 43 at 9. Defendants dispute this because, during the deprivation period, Plaintiff did not complain that he did not have toilet paper in his grievances and mental health staff noted that Plaintiff's hygiene was adequate to good. ECF No. 36-5 at 8. They also contend that temporary deprivations of hygiene items do not violate an inmate's rights and that, even if Plaintiff was deprived of those items for an amount of time, "staff was instructed to provide Plaintiff with access to those items upon request." *Id*. at 7-8. Defendants also point to several inconsistencies and contradictions in Plaintiff's claims, testimony, and papers and question his character to suggest that no reasonable juror could believe him.[8] *Id*. at 9.

Resolving ambiguities in Plaintiff's favor, it appears that Plaintiff was deprived of toiletries, including soap, toothpaste, deodorant, shampoo, and toilet paper, for over two weeks and possibly up to 30 days.[9] Courts in this Circuit have generally held that temporary deprivations

---

[8] The Court rejects this assertion because such "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

[9] Defendants assert that Plaintiff testified that, at most, he was deprived of hygiene items for 18 days of the 30-day PDO period. ECF No. 36-1 at 18 (citing Wells Dep. 117:2-21, 123:14-18). The transcript excerpts generally refer to items being returned to Plaintiff but do not include dates, and therefore the Court cannot definitively conclude that Plaintiff was deprived of toiletries for only 18 days.

7

of toiletries do not violate an inmate's Eighth Amendment rights, but that particularly lengthy deprivations do. *See Trammell*, 338 F.3d at 165 (deprivation of toiletries for about two weeks did not violate the plaintiff's constitutional rights) (citation omitted); *Fernandez v. Armstrong*, No. 3:02-CV-2252, 2005 WL 733664, at *5 (D. Conn. Mar. 30, 2005) (denial of hygiene items for 16 days did not violate the plaintiff's constitutional rights); *Davidson v. Murray*, 371 F. Supp. 2d 361, 371 (W.D.N.Y. 2005) ("occasional or temporary deprivations of personal hygiene items" does not violate an inmate's constitutional rights); *George*, 2008 WL 4412109, at *5 (deprivation of hygiene items for about 60 days violated the plaintiff's constitutional rights).

While Plaintiff did not specifically mention that he did not have toilet paper or was forced to wipe himself with his hands in any grievance, he did state that he was being deprived of "hygienic items" in four of the five grievances filed during the deprivation period. *See* ECF No. 1 at 21-25. On the other hand, staff documented Plaintiff's hygiene as adequate to good and he had regular access to showers, ECF No. 36-1 at 11, 14-15; ECF No. 43-2 at 5, and his health records do not reveal complaints about a lack of hygiene items. *See* ECF No. 36-2, Ex. G (filed under seal at ECF No. 41). But Plaintiff's mental health records reveal that he complained of not having a toothbrush or toothpaste on October 6, 2015, and made repeated demands to have his "personal items" returned to him. *See* ECF No. 36-3, Ex. E (filed under seal at ECF No. 41).

Based on all of the above, the Court concludes that there is a triable issue of fact as to the length of time Plaintiff was deprived of his toiletries and whether Plaintiff was therefore deprived of the minimal civilized measure of life's necessities.

---

Plaintiff testified that he was deprived of his toiletries at least over two weeks, and he also indicated that items were slowly returned to him during the last 10 days of the 30-day deprivation period. ECF No. 36-2 at 57, 58.

### 2. Subjective Prong

Plaintiff testified that when he complained about the deprivations to Norris, Norris said that it was not up to him whether Plaintiff would get his items back. ECF No. 36-2 at 13. Plaintiff also alleges that he told Norris on "multiple occasions" that he needed toilet paper and that he told him daily that he could not get toilet paper, soap, toothpaste, a toothbrush, shampoo, or deodorant, but that Norris ignored or denied Plaintiff's complaints. ECF No. 43-2 at 4-5; ECF No. 43 at 11. Norris does not recall any conversations with Plaintiff about his toiletries and claims that, if he had known, he "would have instructed that those items be provided to [Plaintiff]." ECF No. 36-3 at 8.

Plaintiff submitted an affidavit from Alan Cata, his RMHU cell-neighbor, who says that Plaintiff "complained to everyone that went by his cell including Captain Norris whom he complained to on many occasions" about his need for a mattress, pillow, toilet paper, soap, toothpaste, and other items, and that Norris never instructed security staff to fix the situation. ECF No. 43-1 at 1. Plaintiff allegedly has "several witnesses . . . he wishes to depose and subpoena to testify on his behalf." ECF No. 43-3 at 7.[10] Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that he has raised an issue of fact as to whether Norris[11] knew Plaintiff's need for personal hygiene items posed an excessive risk to his health or safety and yet disregarded that risk.

Accordingly, Defendants' summary judgment motion is DENIED as to Plaintiff's conditions of confinement claim related to the deprivation of toiletries.

---

[10] To the extent that this statement can be construed as a request to re-open discovery, which concluded on August 31, 2018, the Court denies that request. "A party opposing summary judgment on the ground that it requires further discovery must submit an affidavit showing (1) what facts are sought . . . and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Ifill v. Goord*, No. 03-CV-355S, 2012 WL 176492, at *3 (W.D.N.Y. Jan. 20, 2012) (citation omitted). Plaintiff has not satisfied these requirements.

[11] The Court discusses this claim as it relates to Shields later in this Order.

9

**II. Qualified Immunity**

Defendants argue that they are entitled to qualified immunity because issuing the PDOs was objectively reasonable and authorized by state regulation. ECF No. 36-5 at 14 (citing N.Y.C.R.R. § 305.2(A)). Qualified immunity affords government officials a defense "from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A right is clearly established if in light of preexisting law the unlawfulness of the action taken is apparent." *Smith v. Coughlin*, 938 F.2d 19, 20 (2d Cir. 1991) (alterations and quotation marks omitted).

An inmate's constitutional right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene is clearly established. *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) ("Prison officials violate the Constitution when they deprive an inmate of his 'basic human needs,' such as food, clothing, medical care, and safe and sanitary living conditions."); *see also George*, 2008 WL 4412109, at *6 ("[T]he Court has no doubt that reasonable prison officials would understand that depriving an inmate of soap, showers, toilet paper, cell cleaning supplies, a toothbrush, toothpaste, exercise and running water for approximately sixty days, as plaintiff asserts, constitutes a violation of the Eighth Amendment."). It would be unreasonable to think that depriving an inmate toiletries, including toilet paper, for up to 30 days did not violate his constitutional rights. Moreover, there are issues of fact as to how long Plaintiff was deprived toiletries, and therefore the Court concludes that such discrepancies preclude summary judgment based on qualified immunity.

## III. Personal Involvement

Finally, Defendants argue that they were not personally involved in depriving Plaintiff toiletries and therefore Plaintiff's claim should be dismissed. To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. But there are several ways a supervisory official can be personally involved in an alleged constitutional violation, such as being grossly negligent in supervising subordinates who committed the wrongful acts or exhibiting deliberate indifference to an inmate's rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).

### A. Defendant Norris

Plaintiff alleges that he complained directly to Norris "on multiple occasions" that he needed toilet paper, informed Norris daily that he could not get toilet paper, soap, toothpaste, a toothbrush, shampoo, or deodorant, and that Norris ignored or denied Plaintiff's complaints. ECF No. 43-2 at 4-5; ECF No. 43 at 11. Mr. Cata's affidavit further substantiates these claims. ECF No. 43-1. Accordingly, the Court finds that Plaintiff has sufficiently established Norris's personal involvement in the alleged deprivation of toiletries.

### B. Defendant Shields

Plaintiff has not made the same showing as to Shields. Plaintiff testified that he has never met or spoke to Shields and that he only sued him because his name appeared on several PDOs. ECF No. 36-1 at 2; ECF No. 36-2 at 7-8, 74. Plaintiff has not submitted any evidence that Shields knew of the alleged deprivation of hygiene items and failed to remedy the wrong or was grossly

negligent in supervising his subordinates. Accordingly, the Court grants Defendants' motion in this regard and dismisses Shields from the case.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 36) is GRANTED IN PART and DENIED IN PART. The Court dismisses Plaintiff's conditions of confinement claim related to the PDOs and all claims against Defendant Shields. The Clerk of Court will terminate Shields from this case.

One conditions of confinement claim remains against Norris for the alleged deprivation of Plaintiff's hygiene items. By separate order, the Court will schedule a status conference to set a trial date.

IT IS SO ORDERED.

Dated: September 26, 2019
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court